IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAYCHEAL PIPER, | § | |
| *Plaintiff*, | § | 5-15-CV-00771-FB-RBF |
| vs. | § | |
| NATHAN J. PRESTON, | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Summary Judgment, Dkt. No. 41, filed by Defendant Nathan J. Preston, a detective for the San Antonio Police Department. At issue is his entitlement to qualified immunity with respect to claims pursuant to 42 U.S.C. § 1983 asserted against him for excessive force, false imprisonment, and unlawful arrest.

All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Rules CV-72 and 1 to Appendix C of the Local Rules for the United States District Court for the Western District of Texas. Dkt. No. 48. The Court has federal question jurisdiction over this § 1983 case, *see* 28 U.S.C. § 1331, and the undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons discussed below, the undersigned concludes that Detective Preston is entitled to qualified immunity. Accordingly, it is recommended that Preston's Motion for Summary Judgment, Dkt. No. 41, be **GRANTED**.

1

## I. Facts Supported by the Summary Judgment Record

This § 1983 action stems from an early morning traffic stop (at approximately 1:30 am) on November 7, 2014. Plaintiff Raycheal Piper does not dispute that Preston stopped her for speeding or that she was in fact driving 55 mph in a 45 mph zone. She does, however, dispute the lawfulness of her ensuing arrest and the force used by Detective Preston in connection with it.

The record includes a video from the dashboard camera of Preston's patrol car. Both parties agree the video provides some of the best evidence of the traffic stop and ensuing arrest. The undersigned has viewed the video. The summary judgment record also includes a sworn affidavit from Preston. There is no affidavit from Piper. Indeed, there is no other competent evidence (in contrast to argument from counsel) reflecting her view of events.

The video shows Preston initiating the traffic stop. As Preston's patrol car pulls up behind Piper, she moves her vehicle off the road and into a grocery store parking lot, where she comes to a stop. After stopping immediately behind Piper's vehicle, Preston exits his patrol car and walks up to the driver's side of Piper's SUV. He then asks Piper for her driver's license and explains the reason for the stop—driving 55 mph in a 45 mph zone. Piper's response is slurred and disjointed. She soon thereafter admits to drinking "some wine" that evening. As he is speaking with Piper, Preston could, he explains is his uncontroverted affidavit, "smell a strong odor of intoxicants coming from [Piper's] breath. She also had bloodshot eyes and," as mentioned, "slurred speech." Preston Aff. at 1.

In the video, Preston asks Piper how much wine Piper consumed that evening. Piper, in response, is evasive and immediately begins behaving uncooperatively. The situation escalates quickly. Piper repeatedly fails to comply with many, many clear instructions from Preston for her to get out of her SUV. The obviously already frustrated Preston soon opens Piper's door and

2

orders Piper both to turn off and to exit her vehicle. She continues to ignore Preston, acting both somewhat confused and aggrieved by Preston's insistence and impatient tone. Her SUV appears to remain running. Preston warns Piper that she will be placed under arrest if she continues to ignore his instructions. Piper's response, "arrest me," elicits a predictable response from the already extremely frustrated Preston, who immediately informs her that she is under arrest. The problem, for all concerned, is that Piper is still seated in her vehicle, which appears still to be running, and she continues to refuse to exit as instructed, even when she is threated with pepper spray.

At this point, while (again) explaining to Piper repeatedly, "get out of the vehicle, you are under arrest," Preston relents on his threat to use pepper spray and instead uses his hold on Piper's left arm to pull her in an effort to remove her physically from her vehicle. This tactic, however, fails. At approximately one minute and twenty seconds after Preston first ordered Piper out of her vehicle, Preston radios for backup and (again) orders Piper out of the vehicle several more times, while simultaneously maintaining his grip on her left arm. Piper continues to ignore his instructions. Preston then pulls on Piper's left arm in a second, more robust attempt to remove her physically from the vehicle. But she hooks her right arm around the steering wheel to physically resist removal and at one point, pushes his hand away. *See* Preston Aff. at 2.

The video next shows Preston pull out his pepper spray from his belt, and for a second time he holds it in Piper's face and threatens to use it if she does not get out of the vehicle. He warns Piper that this is her "last chance" to exit the vehicle. She still does not comply. Preston again relents with the pepper-spray threat and instead resumes his efforts to physically remove Piper from the vehicle. Preston is yet again thwarted by Piper as she leans towards the passenger seat and, we are told by Preston in his affidavit, continues to pull away from Preston by holding

3

the steering wheel with her right hand or arm. Preston Aff. at 2. Preston finally is able to physically remove Piper from her vehicle. He takes his pepper spray from his belt (for a third time) as Piper stumbles from the SUV in his grasp.

The situation only worsens with Piper out of the car. Preston, holding Piper's left wrist, orders Piper to turn around and face her vehicle. At the same time, Preston physically guides Piper so he is standing behind her while she faces the side of her own vehicle, with her right hand pressed against vehicle's side and her left arm in Preston's grasp. Piper ignores Preston's instruction to turn around. Instead, Piper uses her right hand to push off the side of her vehicle and swing back around to face Preston. At this point, Preston sprays Piper in the face with the pepper spray he is holding. He then orders her to the ground and soon thereafter takes her to the ground off-camera. In his affidavit, Preston explains his reason for taking Piper to the ground: "I got some of the pepper spray in my mouth which caused me to have some breathing problems and burning to my face. At that point I believed it necessary to put the Plaintiff on the ground for my safety." *Id.* at 2. Piper alleges in her complaint that Preston "smashed her face into the concrete" after throwing her to the ground. *See* Amend. Compl.¶ 20. There is, however, no evidence of this. Preston avers in his uncontroverted affidavit that "at no time" did he "throw the Plaintiff to the ground or smash her face on the concrete." Preston Aff. at 3. Off camera, Preston places Piper in handcuffs. Backup arrives a short while later.

A subsequent search of Piper's car revealed a small amount of marijuana and a pipe. Authorities charged her with driving while intoxicated, resisting arrest, possession of marijuana, and possession of narcotics paraphernalia. Her blood alcohol level, when later tested, was 0.163. Ex. C-9 to Mot. Authorities ultimately dropped the criminal charges against her.

On September 3, 2015, Piper sued the City of San Antonio and Preston, in his individual capacity, asserting that Preston's actions violated her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *See* Compl. ¶¶ 4, 19. She also brought various state law claims, which she later dropped. She also later dropped the City as a defendant. *See* Dkt. No. 45; Resp. at 14.

## II. Analysis

The only issue on summary judgment is whether Preston is entitled to qualified immunity from Piper's remaining claims for unlawful arrest, false imprisonment, and excessive force. Although Piper raises a number of constitutional provisions in her complaint, her allegations all boil down to allegations of excessive force, false imprisonment, and unlawful arrest in violation of her rights under the Fouth Amendment. *See e.g.*, *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994) (holding that although plaintiff alleged violations of rights under both the Fourth and Fourteenth Amendments, her claims were "properly considered under the Fourth Amendment, the more specific constitutional right implicated by her allegations"). Moreover, Piper's response focuses solely on the Fourth Amendment. Accordingly, the intersection of qaulified immunity and the various alleged violations of Piper's Fourth Amendment rights is the only live issue. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived").

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quotation marks omitted). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v.*

*Briggs*, 475 U.S. 225, 343, 341 (1986)). Once qualified immunity is properly raised, as Preston has done here, the plaintiff bears the burden of negating the defense, even on summary judgment. *Griggs v. Brewer*, 841 F.3d 308, 312-13 (5th Cir. 2016). Piper has failed to meet this burden.

*Fourth Amendment: False Imprisonment / Unlawful Arrest*. The parties agree that Preston cannot be liable on Piper's claims for false imprisonment and unlawful arrest if there was probable cause to place Piper under arrest. *See* Dkt. Nos. 41 at 2, 44 at 5-8; *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) ("The constitutional claim of false arrest requires a showing of no probable cause."). Probable cause consists of "'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Club Retro,* 568 F.3d at 204 (quoting *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) and *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). What is more, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.'" *Id.* (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) and *Hunter v. Bryant,* 502 U.S. 224 (1991)). Preston, in other words, will enjoy qualified immunity if he reasonably but mistakenly believed there was probable cause for an arrest. And here, even viewing the summary judgment evidence in the light most favorable to Piper, it was not objectively unreasonable for Preston to conclude there was probable casue to believe Piper was driving while intoxicated or resisting arrest. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that Courts may "exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The first issue is whether there was probable cause for an arrest for driving while intoxicated. Uncontroverted evidence, along with the video, reflects probable cause to suspect Piper was driving while intoxicated, even viewing the evidence in Piper's favor. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (explaining that although a plaintiff bears the burden of negating qualified immunity, all inferences are drawn in his favor). Piper was speeding. She admitted to drinking that evening. She was consistently uncooperative. Preston "could smell a strong odor of intoxicants coming from [Piper's] breath. She also had bloodshot eyes and slurred speech." Preston Aff. at 1. A reasonable officer could conclude that there was probable cause to believe she was driving while intoxicated.[1] Likewise, it cannot be said that every reasonable officer under these circumstances would believe no probable cause existed to arrest Piper for driving while intoxicated.[2]

Piper's various arguments to the contrary are unavailing. She alleges that the evidence reflecting her inebriation is a matter of credibility, yet she has introduced no competing evidence to challenge Preston's affidavit. No credibility determinations are required to view the events on

---

[1] *See Wilder v. Turner,* 490 F.3d 810, 815 (10th Cir. 2007) (reversing denial of qualified immunity on false arrest claim because officer had probable cause to believe plaintiff was driving under the influence; officer "observed several indicia of Plaintiff's alcohol consumption including "a moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand movements" and plaintiff refused to participate in a field sobriety test); *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006) ("A prudent officer could conclude from a refusal to take a test, coupled with the smell of alcohol, that the driver had in fact been drinking."); *Maxwell v. State,* 253 S.W.3d 309, 314 (Tex. App.—Fort Worth 2008, pet. ref'd) (driver's refusal to submit to a field sobriety test may be considered in probable cause review).

[2] *See, e.g.*, *Vasquez v. Chacon*, No. CIV.A. 3:08CV2046MBH, 2009 WL 2169017, at *8 (N.D. Tex. Jul. 20, 2009), *aff'd*, 390 Fed. App'x 305 (5th Cir. 2010) (explaining that plaintiff's physical signs of intoxication—bloodshot eyes, slurred speech, and an agitated and excited demeanor—coupled with her admission that she had been drinking alcohol that evening, provided officers probable cause to arrest her for public intoxication); *Dyar v. State*, 125 S.W.3d 460, 464 (Tex. Crim. App. 2003) (probable cause to arrest defendant for driving while intoxicated where driver admitted to drinking and driving, officer smelled alcohol, observed slurred speech, unintelligible answers, and red, glassy eyes).

the video in conjunction with Preston's unchallenged affidavit and conclude that there was probable cause to arrest Piper. She next takes issue with the short timeframe in which an officer would have to find probable cause in this case. But the mere fact that an officer might have had to make a probable-cause determination in a relatively short time frame does not support a denial of qualified immunity here. The undersigned is not aware of any set time frame or minimum allowable time for assessing probable cause in circumstances such as these. Instead, probable cause is determined based on "the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). There was sufficient time here to conclude Piper was intoxicated, even viewing the evidence in her favor.

Piper's arguments are not advanced by her reference to Preston's alleged subjective belief that he was still only investigating her for driving while intoxicated. When assessing qualified immunity, "the test is one of objective reasonableness." *Delacueva v. Tex. Alcoholic Beverage Com'n*, 182 F.3d 913, 1999 WL 422947, at *1 (5th Cir. May 25, 1999). "[Officers'] motivations and subjective beliefs as to the lawfulness of their conduct are irrelevant if a reasonable officer could have found probable cause existed for the arrest." *Id.* Because a reasonable officer in Preston's position could have found probable cause for Piper's arrest, Preston is entitled to qualified immunity on Piper's unlawful arrest and false imprisonment claims. *See Cooper v. City of La Porte Police Dep't*, 608 Fed. App'x 195, 199 (5th Cir. 2015) ("[O]fficers are entitled to qualified immunity unless there was not probable cause for the arrest and a reasonable officer in their position could not have concluded that there was probable cause for the arrest.").

Second is the issue of probable cause for an arrest for resisting arrest. To that end it cannot be said that every reasonable officer under these circumstances would believe no

8

probable cause existed to arrest Piper for resisting arrest. Resisting arrest, under Texas law, involves "intentionally prevent[ing] or obstruct[ing] a person [one] knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another." Tex. Penal Code § 38.03(a). "It is no defense to prosecution" for resisting arrest to argue that "the arrest or search was unlawful." *Id.* § 38.03 (b). Piper denies using any violence against Preston when resisting his efforts to pull her out of her vehicle, characterizing her actions as "stabilizing herself from being hurt." Resp. at 7. But even "pulling out of an officer's grasp is sufficient to constitute resisting arrest [under Texas law]." *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013). Further, "[i]n Texas, the act of resisting can supply probable cause for the arrest itself." *Id.*

Preston submits via a sworn affidavit that when he attempted to pull Piper out of the vehicle, Piper hooked her right arm onto the steering wheel and at one point even pushed his hand away. *See* Preston Aff. at 2. Although Piper argues that the "observations made by Preston in his affidavit are not undisputed issues of fact but are contested and material to the determination of whether he falsely arrested her," Resp. at 7, she offers no contradictory competent summary judgment evidence. Further, nothing in the video contradicts this portion of Preston's affidavit. *C.f. Eiteman v. City of Rosenberg*, No. CIV.A. H-11-4633, 2013 WL 5575884, at *1 n. 12 (S.D. Tex. Oct. 9, 2013) (refusing to consider portions of officer's affidavit that were contradicted by the video evidence). Piper certainly could have placed Preston's version of events in dispute, but she cannot do so now merely by relying on unsupported arguments in summary judgment briefing. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (to negate qualified immunity a plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of

the officer's conduct"); *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) ("To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'") (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)).

*Fourth Amendment: Excessive Force.* Preston is also entitled to qualified immunity on Piper's excessive-force claim. A claim for excessive force involves "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). Once again, the qualified-immunity inquiry looks into whether there was a violation of a clearly established right of which a reasonable person would have known. *Babb*, 33 F.3d at 477. In this context, "[t]he Supreme Court has explained that courts must not define clearly established law at a high level of generality." *Romero v. City of Grapevine*, 888 F.3d 170, 178 (5th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308, (2015)). "Instead, the question is 'whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [he or she] confronted.'" *Id.* at 309 (emphasis added) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 1993 (2004)).

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Poole*, 691 F.3d at 627 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Any force employed, however, must be "'objectively reasonable' in light of the facts and circumstances confronting [the officer]." *Id.* "In gauging the objective reasonableness of the force used by a law enforcement officer, [courts] must balance the amount of force used against the need for that force." *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). In conducting this balancing, courts look to "the facts and

10

circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Poole*, 691 F.3d at 628 (quoting *Graham*, 490 U.S. at 396).

The facts and circumstances provide that Preston's use of force, although not ideal, was not objectively unreasonable. Piper was sitting behind the wheel of a running motor vehicle, and a reasonable officer could therefore have viewed Piper as posing a threat. *Bros. v. Zoss*, 837 F.3d 513, 518 (5th Cir. 2016) (recognizing that a motor vehicle can be used as a dangerous weapon and as "[a]s long as [the plaintiff] remained in [his vehicle], he posed a potential danger the officers and others"). Piper repeatedly refused to comply with Preston's lawful commands to turn off and exit the vehicle. She also actively resisted Preston's efforts to remove her from the vehicle. *Id.* (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance.")). "The use of some force is reasonable when an arrestee resists or evades arrest *or disobeys orders*." *Griggs v. Brewer*, No. 5:15-CV-186-C, 2016 WL 8578059, at *3 (N.D. Tex. Jan. 27, 2016), *aff'd*, 841 F.3d 308 (5th Cir. 2016) (emphasis added).

In attempting to remove Piper from the vehicle, Preston first tried to secure Piper's voluntary cooperation. When that did not work, Preston pulled on Piper's left arm. In response, however, Piper leaned towards the passenger seat, hooked her right arm onto the steering wheel, and pushed his hand away. Preston's threats to use pepper spray also went unheeded. Faced with this resistance, Preston grabbed Piper and pulled. The relevant inquiry, we must keep in mind, is "whether existing precedent placed the conclusion that [Preston] acted unreasonably *in these*

*circumstances* beyond debate." *Mullenix*, 136 S. Ct. at 309 (quotation marks omitted and emphasis added). The Fifth Circuit has found this type of force (and more) reasonable under analogous circumstances.[3] It is therefore not "beyond debate" that Preston acted unreasonably in these circumstances. *Mullenix*, 136 S. Ct. at 309.

Much the same conclusion is reached in relation to Preston's use of pepper spray and actions in taking Piper to the ground and placing her in handcuffs. *See Poole*, 691 F.3d at 629 (by refusing to turn around and give up his arm, plaintiff posed an "immediate threat to the safety of the officers" and "actively resist[ed]" the officers' instructions; thus the officers' use of a taser and subsequent take down was not excessive). "Courts have [also] consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest *or refusing police requests*, such as requests to enter a patrol car or go to the hospital." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) (emphasis added). Nor can forcing a resisting arrestee to the ground be labeled objectively unreasonable under these circumstances. *See Hernandez v. City of Lubbock, Tex.*, 634 Fed. App'x 119, 122 (5th Cir. 2015) (forcing arrestee to the ground during arrest was not objectively unreasonable; following arrestee's initial resistance of officer's authority, arrestee moved her wrist when officer attempted to handcuff her).

Piper's arguments to the contrary on this point are unavailing. According to Piper, Preston's actions were objectively unreasonable because she was merely "bracing" herself with her hand, Preston had control of her at all times, and Preston's use of force was immediate. Resp.

---

[3] *See, e.g., Stone v. Damons*, 252 Fed. App'x 581, 582 (5th Cir. 2007) ("[G]iven [the driver's] resistance [in locking her car and rolling up the window and refusing to obey the officer's order to exit her vehicle,] Officer Damons's use of pepper spray, his pulling her from the vehicle, and his handcuffing her were not unreasonable under the Fourth Amendment."); *Bros.*, 837 F.3d at 518 (finding force reasonable where officers only used their hands to pull driver who was only passively resisting from his vehicle; although they drew their guns during the encounter, they did not use them, nor did they gratuitously strike the individual).

at 12. But the video shows Piper resisting Preston's attempt to place her in handcuffs. Finally, even assuming that Piper sustained facial injuries during the struggle, as she asserts, there is no indication on the video or any other competent summary judgment evidence indicating that Preston used any more force than was necessary to place Piper in handcuffs. *C.f. Anderson v. McCaleb,* 480 Fed. App'x 768, 773 (5th Cir. 2012) ("Officer Brant Smith should have known that he could not beat Anderson after he stopped resisting arrest or slam Anderson to the ground after he was handcuffed.").

It bears emphasis that the inquiry here does not concern whether Preston was at his best when interacting with Piper. As aggravating and insubordinate as Piper was, it surely is part of the job of a police officer to exercise significant patience in these types of situations. One would hope a police officer in these circumstances could and would exercise more patience than Preston did. Likewise, the inquiry here is also not about whether Preston followed best practices under the circumstances. He surely did not. A fellow officer who arrived on the scene to provide backup appears on the video and tells the highly agitated Preston to "calm down." This was good advice. The situation surely could have been handled in another way. Preston might have spent more time negotiating with Piper. He might have used a lighter tone. He might have waited for backup to arrive. He might have paused to count to 100 before feeling the need to get physical.

In the final analysis, however, "[t]here can be more than one reasonable response to a situation, and the Fourth Amendment does not require officers to use 'the most prudent course of action' to handle it." *Griggs*, 2016 WL 8578059, at *3 (quoting *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993)).[4] Accordingly, the inquiry before the Court is whether Preston's less-than-

---

[4] *See also Bros.*, 837 F.3d at 520 (finding the approximately two minutes that the officer spent negotiating with plaintiff before deciding to resort to force was not objectively unreasonable especially in light of plaintiff's "explicit and repeated refusal to comply with [the officer's]

13

ideal response involved force that was clearly excessive and the excessiveness of the force used was clearly unreasonable. *See Poole*, 691 F.3d at 628. Reasonableness is not determined through the lens of perfect hindsight. *Graham*, 490 U.S. at 396. Instead, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"; "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id*. (quotation marks and citations omitted). As discussed, these principles reflect that Preston benefits from qualified immunity here.

## III. Conclusion

For the reasons discussed above, it is recommended that Preston's Motion for Summary Judgment, Dkt. No. 41, be **GRANTED**.

All matters for which the above-entitled and numbered case were referred to the undersigned have been considered and acted upon. **IT IS THEREFORE ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party

---

requests to exit the pickup"); *Carroll v. Ellington*, 800 F.3d 154, 176 n. 12 (5th Cir. 2015) (suggesting that use of force may be objectively reasonable where officers do not immediately resort to force; they do so only after their verbal commands are ignored).

shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

SIGNED this 28th day of June, 2018.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE